UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANE DOE,

                Plaintiff,

      -against-

JAVIER GONZALEZ,

                Defendant.

Case No.: 21-CV-4580

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION FOR DEFAULT JUDGMENT**

Travis Pierre-Louis
Julia Elmaleh-Sachs
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
Travis@crumiller.com
Julia@crumiller.com
Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

DEFAULT JUDGMENT STANDARD .................................................................................. 5

ARGUMENT ........................................................................................................................... 6

I.      PLAINTIFF IS ENTITLED TO ENTRY OF DEFAULT AGAINST DEFENDANT ... 6

II.     PLAINTIFF'S CAUSES OF ACTION ARE AMPLY PLED AND ESTABLISH

LIABILITY .............................................................................................................................. 9

    A.    Statute of Limitations ..................................................................................... 9

    B.    Cause of Action One: Sexual Assault and Battery ..................................... 10

    C.    Cause of Action Three: Gender Motivated Violence Protection Act ......................... 11

    D.    Cause of Action Five & Six: Certain Activities Relating to Material Constituting or

Containing Child Pornography, 18 U.S.C. § 2252A ............................................................ 12

III.    THE COURT MAY AWARD DAMAGES WITHOUT AN INQUEST ................. 13

IV.    PLAINTIFF'S DAMAGES CALCULATIONS ....................................................... 14

    A.    Compensatory Damages ............................................................................... 14

    B.    Punitive Damages .......................................................................................... 16

    C.    Attorney's Fees and Costs ............................................................................ 17

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*Action S.A. v. Marc Rich & Co., Inc.*,

    951 F.2d 504, 508 (2d Cir. 1991) .......................................................................... 14

*Alston v. Northstar La Guardia LLC*,

    10 Civ. 3611 (LAK) (GWG), 2010 U.S. Dist. LEXIS 90958, at *3 (S.D.N.Y. Sep. 3, 2010) ... 6

*Antoine v. Brooklyn Maids 26, Inc.*,

    489 F. Supp. 3d 68, 90 (E.D.N.Y. Sep. 26, 2020) ..................................................... 9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,

    522 F.3d 182, 186 (2d Cir. 2008) .......................................................................... 18

*Au Bon Pain Corp. v. Artect, Inc.*,

    653 F.2d 61, 65 (2d Cir. 1981) ........................................................................... 5, 6

*Biggs v. City of N.Y.*,

    No. 08 Civ. 8123 (PGG),

    2010 WL 4628360, at *7 (S.D.N.Y. Nov. 16, 2010) ............................................... 10

*BMW of N. Am. v. Gore*,

    517 U.S. 559, 575 (1996) ..................................................................................... 16

*Breest v. Haggis*,

    115 N.Y.S.3d 322, 330 (N.Y. App. Div. 2019) ...................................................... 12

*Bridge Oil Ltd. V. Emerald Reefer Lines*, LLC,

    No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) ............. 8

*Caldwell v. City of New York*,

    No. 21 Civ. 6560, 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021) ..................... 9

*Cesario v. BNI Constr., Inc.*,

    07 Civ. 8545 (LLS) (GWG), 2008 U.S. Dist. LEXIS 103155, at *3

    (S.D.N.Y. Dec. 15, 2008) ................................................................................................ 13, 14

*Chanel, Inc. v. Jean-Louis*,

    No. 06 Civ. 5924 (ARR) (JO), 2009 U.S. Dist. LEXIS 113910, at *11

    (E.D.N.Y. Dec. 7, 2009) ........................................................................................................... 14

*Chanel, Inc. v. Jean-Louis*,

    No. 06-cv-5924 (ARR)(JO), 2009 WL 4639674, *3 (E.D.N.Y. Dec. 7, 2009) .......................... 6

*Chen v. JP Standard Constr. Corp.*,

    14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016),

    *adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) ............................................................ 6

*Citigroup Global Mkts., Inc. v. JWS 1999 Holding B.V.*,

    No. 08 Civ. 5362 (RJS), 2009 U.S. Dist. LEXIS 83776, at *2 (S.D.N.Y. Sep. 12, 2009) ......... 6

*City of New York v. Golden Feather Smoke Shop, Inc.*,

    No. 08 Civ. 3966 (CBA), 2011 U.S. Dist. LEXIS 149748, at *2 (E.D.N.Y., Dec. 30, 2011) .... 8

*City of New York v. Mickalis Pawn Shop, LLC*,

    645 F.3d 114, 137 (2d Cir. 2011) ............................................................................................. 6

*Doe v. Alsaud*,

    No 13 Civ. 571 (RWS), 2017 WL 4541426 at *3 (S.D.N.Y. Oct. 10, 2017) .......................... 14

*Doe v. City of Waterbury*,

    2009 U.S. Dist. LEXIS 95936, 2009 WL 3348314, at *2-3 (D. Conn. Oct. 15, 2009) ........... 15

*Doe v. Constant*,

    354 F.App'x 543, 545 (2d Cir. 2009) ...................................................................................... 10

*Duffy v. Modern Concrete Corp.*,

    No. 07 Civ. 962 (JS) (AKT), 2008 U.S. Dist. LEXIS 121592 (E.D.N.Y. Mar. 25, 2008) ..... 7, 9

*Finkel v. Romanowicz*,

    577 F.3d 79, 84 (2d Cir. 2009) ............................................................................................... 6

*Fustok* v. *ContiCommodity Servs., Inc.*,

    873 F.2d 38, 40 (2d Cir. 1989) .............................................................................................. 13

*Garden City Boxing Club, Inc. v. DeJesus*,

    No. 05 Civ. 3898 (SJ), 2006 WL 1155166, at *3 (E.D.N.Y. Apr. 27, 2006) ............................ 8

*Gesualdi v. Mack Excavation & Trailer Serv.*,

    No. 09 Civ. 2502 (KAM) (JO), 2010 U.S. Dist. LEXIS 23620, at *3

    (E.D.N.Y. Mar. 15, 2010) ...................................................................................................... 14

*Greenbaum v. Handelsbanken*,

    67 F. Supp. 2d 228 (S.D.N.Y. 1999) ..................................................................................... 17

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,

    973 F.2d 155, 158 (2d Cir. 1992) ..................................................................................... 5, 6, 8

*Grisanti v. Cioffi*,

    2001 U.S. Dist. LEXIS 14358, 2001 WL 777435, *12-13 (D. Conn. Jun. 14, 2001) .............. 15

*Hill v. Airborne Freight Corp.*,

    212 F. Supp. 2d 59, 74 (E.D.N.Y. 2002), aff'd, 93 F. App'x 260 (2d Cir. 2004) ................... 17

*Howard Johnson Intern., Inc. v. Wang*,

    7 F. Supp. 2d 336, 341 (S.D.N.Y. 1998) ................................................................................ 7

*In McLaughlin v. IDT Energy*,

    No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) ........... 18

*In re Roman Cath. Diocese of Syracuse, New York,*

    628 B.R. 571, 574 n.2 (Bankr. N.D.N.Y. 2021) ........................................ 9

*Kauffman v. Maxim Healthcare Servs.,*

    509 F. Supp. 2d 210, 221 (E.D.N.Y. 2007) ........................................ 17

*Kropelnicki v. Siegel,*

    290 F.3d 118, 130 n.7 (2d Cir. 2002)........................................ 10

*LeBlanc-Sternberg v. Fletcher,*

    143 F.3d 748, 763 (2d Cir. 1998)........................................ 18

*Lee v. Edwards,*

    101 F.3d 805, 809 (2d Cir. 1996)........................................ 16

*Manzo v. Sovereign Motor Cars,*

    No. 08 Civ. 1229 (JG)(SMG), 2010 WL 1930237, at *5 (E.D.N.Y. May 11, 2010),

    aff'd, 419 F. App'x 102 (2d Cir. 2011)........................................ 17

*Mason Tenders Dist. Council v. Duce Const. Corp.,*

    No. 02 Civ. 9044 (LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) ............. 7

*Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.,*

    No. 02 Civ. 9044 (LTS) (GWG), 2003 U.S. Dist. LEXIS 6881, at *2

    (S.D.N.Y. Apr. 28, 2003)........................................ 6, 8

*Mendez v. Nooch, Inc.,*

    07 Civ. 11174 (LLS), 2009 U.S. Dist. LEXIS 25114, at *6-7 (S.D.N.Y. Mar. 6, 2009) ......... 14

*Merzon v. Cty. of Suffolk,*

    767 F.Supp. 432, 448 (E.D.N.Y. 1991) ........................................ 10

*Ortiz v. New York City Hous. Auth.*,

    No. 98 Civ. 9543, 198 F.3d 234, at *1, 4 (2d Cir. Sep. 2, 1999) ............................................ 14

*Reiter v. MTA N.Y. City Transit Auth.*,

    457 F.3d 224, 232 (2d Cir. 2006) ............................................ 18

*Ross v. Louise Wise Servs., Inc.*,

    8 N.Y.3d 478, 489 (N.Y. 2007) ............................................ 16

*S.E.C. v. Amerindo Inv. Advisors*,

    639 F.App'x 752, 754 (2d Cir. 2016) ............................................ 10

*Santana v. Latino Express Rests., Inc.*,

    198 F. Supp. 3d 285, 291 n.2 (S.D.N.Y. Jul. 28, 2016) ............................................ 8

*Schneider v. Nat'l R.R. Passenger Corp.*,

    987 F.2d 132, 138 (2d Cir. 1993) ............................................ 15

*SEC v. McNulty*,

    137 F.3d 732, 738 (2d Cir. 1998) ............................................ 8

*Singleton v. Clash*,

    951 F. Supp. 2d 578 (S.D.N.Y. 2013) ............................................ 12

*Turley v. ISG Lackawanna, Inc.*,

    774 F.3d 140, 167 (2d Cir. 2014) ............................................ 17

*U.S. v. Davenport*,

    519 F.3d 940, 942 (9th Cir. 2008) ............................................ 13

*United States v. City of New York*,

    No. 07 CV 2067 (NGG)(RLM), 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013) ............................................ 18

*Villanueva v. Comparetto,*

    580 N.Y.S.2d 30, 33 (2nd Dep't 1992) ................................................................... 11

*Walker v. Dickerman,*

    993, F. Supp. 101, 102, 106 (D. Conn. 1997) ...................................................... 15

## STATUTES

18 U.S.C. § 2252A(a)(2) ............................................................................................. 13

18 U.S.C. § 2252A(a)(5)(B) ........................................................................................ 13

18 U.S.C. § 2255 ................................................................................................... 12, 13

18 U.S.C. § 2255(a) .................................................................................................... 17

18 U.S.C. § 2256(8) .................................................................................................... 13

Administrative Code of City of N.Y. § 10-1104 ................................................... 11, 16

Fed R. Civ. P. 55(a), (b) .............................................................................................. 5

Fed. R. Civ. P. 55(b)(2) ................................................................................................ 1

Fed. R. Civ. P. 12(a)(1)(A)(i) ...................................................................................... 6

N.Y. C.P.L.R. § 214-g ............................................................................................. 1, 9

Plaintiff, who is proceeding pseudonymously as "Jane Doe," respectfully submits this memorandum of law in support of her motion for a default judgment against Defendant Javier Gonzalez.

## PRELIMINARY STATEMENT

This case was instituted under the revival clause of the Child Victims Act ("CVA"). *See* CPLR § 214-g. Gonzalez contacted Doe in an online chatroom for the purposes of engaging in sex when she was just thirteen years old and he was twenty-three. Gonzalez groomed the child; he engaged her in friendly conversation, which soon turned explicit for the purpose of sexually abusing her. Gonzalez pressured the thirteen-year-old girl to meet and statutorily raped her. For the remainder of Doe's childhood, Gonzalez psychologically and sexually abused, sodomized, and forcefully raped Doe on countless occasions. Gonzalez's child abuse resulted in severe and devasting emotional and physical injuries which have followed Doe into her adulthood. Plaintiff therefore commenced the instant action to seek justice against Gonzalez, and remedy the severe emotional distress which has permeated every aspect of her life. Plaintiff brings this action against Defendant to recover damages for sexual assault and battery, violations of the New York City Victims of Gender Motivated Violence Act ("GMVA") and receiving / possession of child pornography.

Plaintiff is entitled to judgment by default pursuant to Fed R. Civ. P. 55(b)(2) and Local Rule 55 against Defendant. Defendant has neither appeared in this action nor answered the pleadings, despite having been properly served and the Clerk of the Court having entered a Certificate of Default. Further, the factual allegations in the Complaint fully support the alleged cause of actions and Plaintiff has sufficiently established the basis for her request for damages through her submissions.

# STATEMENT OF FACTS

In the summer of 2002, Doe was a thirteen-year-old girl living in Suffolk County, Long Island, with her mother and father. Am. Compl., Dkt. No. 13 (the "Complaint", **Ex. 1**), ¶ 8[1]. Declaration of Jane Doe in Support of Motion for Default Judgment ("Doe Decl.", **Ex. 4**) ¶ 3. On or about June 12, 2002, Gonzalez, then a twenty-three-year-old man, met Doe in an AOL chatroom. ¶ 12. Doe Decl. ¶ 7. On her AOL profile, Doe stated that she was fifteen years old because, like many teenagers, she wanted to appear older and cooler. *Id*. Over the following hours, Gonzalez asked Doe a series of questions regarding her body, sexual interests, and sexual history. ¶¶ 13-20. Doe Decl. ¶¶ 8-14. Gonzalez thereafter coerced Doe to meet him in person that evening. ¶¶ 20-22. Doe Decl. ¶¶ 14-16. That night at approximately midnight, Gonzalez arrived at Doe's family home. ¶ 24. Doe Decl. ¶ 18.

Doe's home was a single-floor ranch that sat atop a hill with a private driveway leading down to a busy road. ¶ 23. Doe Decl, ¶ 17. After arriving at the home, Gonzalez traveled up through the wooded part of Doe's driveway to avoid detection. ¶ 24. Doe Decl. ¶ 18. However, Doe's father saw the grown man headed toward his daughter's room. *Id*. Doe's father rushed outside to investigate, but at this point, Gonzalez had already entered Doe's bedroom through her window. ¶ 25. Doe Decl. ¶ 19. Doe's father banged on Doe's bedroom window shouting and cursing. *Id*. Gonzalez convinced Doe to lie to her father and claim that he was her childhood friend. *Id*. Doe's father momentarily left the commotion to retrieve Doe's mother, and Gonzalez took the opportunity to escape. ¶ 26. Doe Decl. ¶ 20. Later that night, Gonzalez called Doe and told her that he had left condoms in her closet and informed her that he wanted to "try again." ¶ 27. Doe Decl. ¶ 21.

---

[1] All paragraph citations herein, unless otherwise specified, are citations to the Third Amended Complaint.

Throughout the following weeks, Gonzalez continued to contact Doe by telephone and online messaging. ¶ 28. Doe Decl. ¶ 22. During these communications, he praised her for "protecting" him from her parents and sent her pornography depicting violent sex between teenage women and much older men. ¶¶ 28-29. Doe Decl. ¶¶ 22-23. On or about June 28, 2002, Gonzalez again traveled to Doe's home and coerced her into performing oral sex on him. ¶¶ 30-39. Doe Decl. ¶¶ 24-33. In July 2002, Gonzalez picked Doe up from her home at night on at least two occasions, drove her to his mother's home, and had sex with her. ¶ 41. Doe Decl. ¶ 35.

During this time, Doe developed an eating disorder which Gonzalez encouraged. ¶¶ 44, 46-47, 55-57. Doe Decl. ¶¶ 38-41, 49-51. Doe also began exhibiting signs of anxiety and depression and stopped enjoying activities she once enjoyed, like singing competitions and math class. ¶ 50. Doe Decl. ¶ 43. Gonzalez demanded Doe not disclose the abuse to her friends or family. ¶ 52. Doe Decl. ¶ 44. Gonzalez furnished Doe with drugs and alcohol and frequently had sex with her while she was unconscious and/or otherwise impaired. ¶¶ 52-53. Doe Decl. ¶¶ 45-46.

 Gonzalez acknowledged the illegality of his conduct several times ¶¶ 27, 90, 96. Doe Decl. ¶¶ 21, 82, 88. On one such occasion, Gonzalez demanded that Do sit apart from him on a train ride into Manhattan because he thought other riders were "looking at [him] like [he was] a pedophile." ¶ 90. Doe Decl. ¶ 82. Gonzalez openly relished in the illegality of his conduct, frequently calling Doe "babyslut." ¶ 58. Doe Decl. ¶ 51. Gonzalez became irate and verbally abusive whenever Doe attempted to distance herself from him. ¶ 59-66. Doe Decl. ¶¶ 52-59. Gonzalez chastised Doe as "careless with [his] feelings," "abusive," "victimizing [him]" and "using [him]" whenever she did not abide by his wishes. ¶¶ 59-61, 70-71. Doe Decl. ¶¶ 52-54. Gonzalez threatened to commit suicide if Doe left him (¶ 66, Doe Decl. ¶ 59) and threatened to

"kill anyone" that kept them apart. ¶ 68. Doe Decl. ¶ 61. On more than one occasion, Gonzalez showed up unannounced while Doe was with friends and berated her publicly. ¶¶ 62-65. Doe Decl. ¶¶ 55-58.

In or around the summer of 2003, Gonzalez demanded Doe take nude photos of herself and send them to him. ¶ 72. Doe Decl. ¶ 65. Gonzalez routinely demanded and received sexually explicit photographs from Doe. ¶ 16; 72; 97. On or about December 23, 2003, Gonzalez forcibly sodomized and raped Doe as she begged him to stop. ¶ 84. Doe Decl. ¶ 76. In the Spring of 2004, Gonzalez called in a bomb threat to Doe's high school to force her out of the building. ¶ 85. Doe Decl. ¶ 77. In or about July 2004, while in New York City ("NYC"), Gonzalez forced Doe to engage in oral intercourse in public. ¶ 91. Doe Decl. ¶ 84. In March 2005, Doe's anxiety and depression grew more severe and began to interfere with her school and her relationship with her family. ¶ 100. Doe Decl. ¶ 92. During this same time, Doe began to suffer a loss of enjoyment in life, panic attacks, and suicidal thoughts and ideation. *Id.* Doe began to abuse drugs in an effort to self-medicate and quell the emotional distress. ¶101. Doe Decl. ¶ 93.

In the fall of 2005, Doe tried to separate herself from Gonzalez; this caused Gonzalez to become irate and maligned Doe as "disgusting" and "pathetic." ¶103. Doe Decl. ¶¶ 94-95. Whenever Doe expressed any ambition, Gonzalez objected, asserting Doe could only strive to be Gonzalez's "concubine" and "sugar baby." ¶ 104. Doe Decl. ¶ 96. In February 2006, Gonzalez enticed Doe to travel to the District of Columbia ("DC") with promises of paid housing and trips. ¶ 105. Doe Decl. ¶ 97. Within minutes of meeting Gonzalez in DC, Gonzalez overpowered and violently raped Doe. ¶¶ 105-106. Doe Decl. ¶ 98. In the fall of 2006, Doe experienced further deterioration of her mental state, including a worsening of her depression, sleeplessness, nightmares, suicidal thoughts, and suicidal ideation. ¶¶ 107-108. Doe Decl. ¶¶ 99-100. Doe saw a

psychiatrist who prescribed her Zoloft. ¶¶ 107-109. Doe Decl. ¶¶ 99-100. On October 15, 2009, Gonzalez was arrested at his office in DC for an unrelated criminal charge of possession of child pornography and soliciting a minor for sex. ¶ 115. Doe Decl. ¶ 106.

Starting in 2013 until today, Doe has seen various mental health providers to address the severe emotional distress resulting from the physical, psychological, and sexual abuse suffered by Gonzalez. ¶ 125. Doe Decl. ¶ 116. To this day, Doe has nightmares about Gonzalez and intrusive thoughts of the abuse. ¶ 133. Doe Decl. ¶ 124. Doe is afraid of men and has difficulty engaging in normal sexual relations because of the abuse. *Id*. Specifically, Doe suffers discomfort and frequent emotional breakdowns while trying to have intercourse with her husband. *Id.* Doe experiences crying spells that last for hours as she recounts the abuse. *Id*. The abuse has strained Doe's relationships, including with her parents. *Id*. Doe has suffered a severe loss of enjoyment of life; unable to smell menthol cigarettes, see the fictional character "Spider-man", listen to the band "Weezer", or engage in various everyday activities without suffering crippling flashbacks of being raped and abused by Gonzalez as a child. *Id.*

## DEFAULT JUDGMENT STANDARD

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment where a defendant "has failed to plead or otherwise defend" an action. *See* Fed R. Civ. P. 55(a), (b); *see also* S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b). A defendant's default constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. *See City of New York v. Mickalis Pawn*

*Shop*, LLC, 645 F.3d 114, 137 (2d Cir. 2011); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"); *Chen v. JP Standard Constr. Corp.*, 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016). "When deciding a [defendant's liability on a] motion for default judgment, courts have also looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]" *Chanel, Inc. v. Jean-Louis*, No. 06-cv-5924 (ARR)(JO), 2009 WL 4639674, *3 (E.D.N.Y. Dec. 7, 2009). If the allegations in the pleading properly state a claim, the plaintiff must then establish damages. *See Greyhound Exhibitgroup*, 973 F.2d at 158. In this regard, the moving party is entitled to all reasonable inferences from the evidence it offers. *See Romanowicz*, 577 F.3d at 84; *Au Bon Pain*, 653 F.2d at 65.

## ARGUMENT

### I.   PLAINTIFF IS ENTITLED TO ENTRY OF DEFAULT AGAINST DEFENDANT

A default judgment should be entered against Defendant, who has failed to respond or appear in this action even though he has been duly served.

Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Gonzalez had 21 days from service of the Complaint to file an answer; he has failed to do so and is in default as a result. *See, e.g., Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02 Civ. 9044 (LTS) (GWG), 2003 U.S. Dist. LEXIS 6881, at *2 (S.D.N.Y. Apr. 28, 2003); *Citigroup Global Mkts., Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 U.S. Dist. LEXIS 83776, at *2 (S.D.N.Y. Sep. 12, 2009) ("Entry of a default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party") (quotation omitted)); *Alston v. Northstar La Guardia LLC*, 10 Civ. 3611 (LAK) (GWG), 2010 U.S. Dist. LEXIS 90958, at *3 (S.D.N.Y. Sep. 3, 2010) ("In light of [the defendant's] default, [the plaintiff's] properly-pleaded allegations

… are accepted as true.").

In determining whether to enter a default judgment, courts have considered (1) whether the default was willful; (2) whether the non-defaulting party would be prejudiced if the entry of a default judgment is delayed; and (3) whether the defaulting party has a potentially meritorious defense. *See Duffy v. Modern Concrete Corp.*, No. 07 Civ. 962 (JS) (AKT), 2008 U.S. Dist. LEXIS 121592, at *3 (E.D.N.Y. Mar. 25, 2008). It is respectfully submitted that in the case at bar, all of these factors weigh heavily in favor of awarding default judgment against Gonzalez and in favor of Doe.

First, with respect to willfulness, Defendant has proved "essentially unresponsive" by his utter failure to appear, answer, or respond to the Complaint, despite being duly served. This deliberate failure – unaccompanied by any explanation – indicates willful default. *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02 Civ. 9044 (LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) ("the Court finds that the Defendants, having failed to respond in any way to the Summons and Complaint or otherwise make any appearance in this action and having failed to provide any explanation for its failure to defend, have defaulted willfully."); *see also Howard Johnson Intern., Inc. v. Wang*, 7 F. Supp. 2d 336, 341 (S.D.N.Y. 1998). Indeed, Plaintiff effectuated personal service and there is no question that Defendant is aware of these proceedings. **Ex. 2**. Moreover, the Clerk of the District Court has entered a Certificate of Default for Defendant. **Ex. 3**. Defendant has made a conscious choice to shirk his obligation to put forward a defense, and this knowing refusal warrants default judgment.

Second, with respect to a meritorious defense, Defendant has not filed an answer and there is no evidence of any defense, never mind one that could be deemed meritorious. *Bridge Oil Ltd. V. Emerald Reefer Lines*, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at

*2 (S.D.N.Y. Oct. 27, 2008); *see Mason Tenders,* 2003 WL 1960584, at *2 ("Since Defendants have failed to proffer any defense and are therefore deemed to have admitted the well-pleaded allegations of the Complaint…the second factor – of whether Defendants have a meritorious defense – need not be addressed."). "[A] defendant's default is an admission of all well-pleaded allegations in the complaint." *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08 Civ. 3966 (CBA), 2011 U.S. Dist. LEXIS 149748, at *2 (E.D.N.Y., Dec. 30, 2011) (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Because of Gonzalez's failure to respond, this Court must accept Doe's well pled allegations as true. As discussed *infra*, Point II, the Complaint thoroughly alleges facts supporting Doe's causes of action and establishing liability against Defendant.

Finally, a showing of willfulness and lack of meritorious defense under the first two prongs is sufficient by itself to support the entry of a default judgment, even without analyzing the third prong of prejudice. *See SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *see also Garden City Boxing Club, Inc. v. DeJesus*, No. 05 Civ. 3898 (SJ), 2006 WL 1155166, at *3 (E.D.N.Y. Apr. 27, 2006) ("[G]iven that the Court has concluded that Defendant's default was not the result of mere negligence or carelessness and that he lacks a meritorious defense to Plaintiff's claims, the Court need not make a finding of prejudice to deny Defendant's motion to vacate the Court's Order."). However, in the instant case, the third prong is also satisfied.

Defendant has engaged in strategic and/or bad-faith delay by willfully refusing to appear or answer the Complaint. This case has been on the Court's docket for over a year, without any forward progress; Plaintiff would be prejudiced if the Court denied her motion and required her to continue waiting indefinitely for Defendant to engage with the judicial process. *See Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 291 n.2 (S.D.N.Y. Jul. 28, 2016); *see also*

*Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 90 (E.D.N.Y. Sep. 26, 2020); *Duffy*,

2008 U.S. Dist. LEXIS 121592 at *4.

## II. PLAINTIFF'S CAUSES OF ACTION ARE AMPLY PLED AND ESTABLISH LIABILITY[2]

### A. Statute of Limitations

In August 2019, New York enacted the Child Victims Act, which "revived" time-barred

civil lawsuits related to sexual offenses against children for a period of one year, by precluding

defenses or affirmative defenses based on the previously applicable statute of limitations. The

CVA includes a broad revival provision which revived Plaintiff's claims. The CVA provides, in

relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . ***every civil claim or cause of action*** brought against ***any party alleging intentional or negligent acts or omission by a person for . . .injury or condition suffered as a result of conduct which would constitute a sexual offense*** as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived.

N.Y. C.P.L.R. § 214-g (McKinney) (emphasis added). The Act requires "revived claims to be

brought not earlier than six months after and not later than one year and six months after the

effective date of the law." *Caldwell v. City of New York*, No. 21 Civ. 6560, 2021 WL 3887678, at

*2 (S.D.N.Y. Aug. 27, 2021) (citing N.Y. C.P.L.R. § 214-g). The Act later was extended until

August 14, 2021. *See In re Roman Cath. Diocese of Syracuse, New York*, 628 B.R. 571, 574 n.2

(Bankr. N.D.N.Y. 2021). The basis for revival is that a complaint plausibly pleads an injury

resulting from conduct which constitutes a sexual offense against a child and that the complaint

---

[2] Plaintiff opts to withdraw her second cause of action (Rape & Criminal Sexual Act in Violation of CPLR 213-c) and her fourth cause of action (Violation of the Trafficking Victim Protection Act, 18 U.S.C. §§ 1591(a)). Although Plaintiff's federal claim is withdrawn, this Court retains diversity jurisdiction over this action. ¶ 4.

is filed within the revival period.

Here, however, Defendant has waived the statute of limitations as an affirmative defense by failing to appear in this action. *See S.E.C. v. Amerindo Inv. Advisors*, 639 F.App'x 752, 754 (2d Cir. 2016) ("the statute of limitations defense was abandoned by their failure to appear and assert that defense"); *Doe v. Constant*, 354 F.App'x 543, 545 (2d Cir. 2009) (affirming entry of default judgment and noting that "timeliness . . . is an affirmative defense that may be forfeited or waived"); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 n.7 (2d Cir. 2002) ("The statute of limitations is an affirmative defense that is waived if not raised. As a result, we have held that 'a district court "ordinarily" should not raise a statute of limitations defense sua sponte.'") (citations omitted).

Plaintiff initiated this case by filing the Complaint through the Court's Electronic Case Filing System on August 13, 2021; the Court therefore received the Complaint that same day. *See* **Ex. 1**. As alleged, Gonzalez began to sexually abuse and rape Plaintiff at the age of thirteen. ¶ 2; 7. Thus, having timely filed her complaint alleging conduct within the ambit of the CVA, all of plaintiff's claims are timely. In any event, Defendant has waived any potential statute of limitations defense.

### B. Cause of Action One: Sexual Assault and Battery

Under New York law, a "civil 'assault' is the intentional placing of another in apprehension of imminent harmful or offensive contact. The elements of a civil 'battery' are (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent." *Biggs v. City of N.Y.*, No. 08 Civ. 8123 (PGG), 2010 WL 4628360, at *7 (S.D.N.Y. Nov. 16, 2010) (quoting *Merzon v. Cty. of Suffolk*, 767 F.Supp. 432, 448 (E.D.N.Y. 1991)). "[A] plaintiff seeking to establish a civil battery need only prove that the defendant intentionally touched [her]

person without ... her consent." *Villanueva v. Comparetto*, 580 N.Y.S.2d 30, 33 (2nd Dep't 1992).

It cannot be questioned that Plaintiff did not consent to *any* of the sexual abuse that Gonzalez committed against her. During the years-long sexual abuse, Plaintiff was a child and could not legally consent to any of the sexual conduct Gonzalez forced upon her. ¶¶ 41; 84; 105; 106. Moreover, as alleged, Gonzalez provided Plaintiff with illicit drugs and alcohol, and performed sex acts on her when she was incapacitated and unable to provide verbal consent. ¶¶ 52-53. Finally, Gonzalez repeatedly sodomized, raped and/or sexually abused Doe over her express and repeated objections. ¶ 84; 91; 105-106. These facts, which are unopposed by Defendant, establish a clear and indisputable claim of civil assault and battery.

## C. Cause of Action Three: Gender Motivated Violence Protection Act

GMVA provides a civil cause of action for "injur[y] by an individual who commit[ted] a crime of violence motivated by gender." Administrative Code of City of N.Y. ("Admin. Code") § 10-1104. The term "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law ... if the conduct presents a serious risk of physical injury to another, whether or not those acts actually resulted in criminal charges, prosecution or conviction." Admin. Code § 10-1103. The term "crime of violence motivated by gender" is defined as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.* Notably, "[r]ape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged in the complaint are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice

or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis*, 115 N.Y.S.3d 322, 330 (N.Y. App. Div. 2019).

Applying the standard above, the alleged conduct clearly constitutes a violation of the GMVA. As discussed *Supra,* Point I(A), Gonzalez repeatedly statutorily raped Doe beginning at age 13, as well as violently raped Plaintiff while she was incapacitated and while she begged him to stop. ¶¶ 84; 91; 105-106. This included Gonzalez forcing Doe engage in oral intercourse in public while in NYC. ¶ 91. Further, Gonzalez's disdain is exhibited by his frequent berating and threating to Doe whenever she had the audacity to object to routine sexual abuse or create a life outside of his perverse and unlawful demands. ¶¶ 59-61, 70-71; 62-65; 103. Gonzalez's efforts – over a period of years – to control a minor girl by way of force shows a gross disregard for the bodily autonomy of women and girls, and their right to live free of sexual misconduct. Moreover, Gonzalez revealed malice through the use of offensive gender-based remark by such as "sex slave," "babyslut," and "whore." ¶ ¶ 58, 118. These unopposed allegations establish liability for violations of the GMVA.

### D. Cause of Action Five & Six: Certain Activities Relating to Material Constituting or Containing Child Pornography, 18 U.S.C. § 2252A

Plaintiff asserts claims under 18 U.S.C. § 2255 ("Section 2255"). Section 2225 was enacted as part of The Child Abuse Victims Rights Act of 1986 to provide a civil remedy for personal injuries suffered by survivors of child sexual exploitation. *Singleton v. Clash*, 951 F. Supp. 2d 578 (S.D.N.Y. 2013). Section 2255(a) provides as follows:

> Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person

> sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a). To set forth a claim under 18 U.S.C. § 2252A(a)(2), a plaintiff must show that the defendant (1) received (2) child pornography. To make out a claim under 18 U.S.C. § 2252A(a)(5)(B), the plaintiff must show that the defendant (1) possessed (2) child pornography. *See U.S. v. Davenport*, 519 F.3d 940, 942 (9th Cir. 2008). The term "child pornography" is broadly defined as "any visual depiction, including any photograph, film, video… of sexually explicit conduct, where…the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct…" 18 U.S.C. § 2256(8).

Here, Gonzalez repeatedly demanded that Doe take nude and/or sexually explicit photos of herself and send them to him while she was a minor. Doe acquiesced to these demands, and Gonzalez received and possessed these nudes and/or sexually explicit images. ¶ 16; 72; 97. As alleged, the material Gonzalez demanded constituted child pornography. Gonzalez's use of a minor to engage in sexually explicit conduct for the purposes of producing a visual depiction of such conduct for his possession are violations of § 2252A(a)(2) and 2252A(a)(5)(B). Plaintiff has therefore established liability on her fifth and sixth causes of action.

### III. THE COURT MAY AWARD DAMAGES WITHOUT AN INQUEST

"[A]n inquest into damages may be held on the basis of documentary evidence 'as long as the Court has ensured that there was a basis for the damages specified in the default judgment.'" *Cesario v. BNI Constr., Inc.*, 07 Civ. 8545 (LLS) (GWG), 2008 U.S. Dist. LEXIS 103155, at *3 (S.D.N.Y. Dec. 15, 2008) (*quoting Fustok* v. *ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (edits omitted)). When a plaintiff's written submissions provide a basis for the damages sought an inquest hearing is not required. *See Cesario*, 2008 U.S. Dist.

LEXIS 103155, at *4.

Further, where a defendant is in default, a plaintiff is permitted to rely on her recollections to establish damages. Plaintiff's sworn declaration detailing the sexual assaults to which she was subjected is satisfactory to establish damages. *See Chanel, Inc. v. Jean-Louis*, No. 06 Civ. 5924 (ARR) (JO), 2009 U.S. Dist. LEXIS 113910, at *11 (E.D.N.Y. Dec. 7, 2009) ("Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing"); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)); *Gesualdi v. Mack Excavation & Trailer Serv.*, No. 09 Civ. 2502 (KAM) (JO), 2010 U.S. Dist. LEXIS 23620, at *3 (E.D.N.Y. Mar. 15, 2010) (declarations and other documentary evidence sufficient to establish damages without a hearing); *Mendez v. Nooch, Inc.*, 07 Civ. 11174 (LLS), 2009 U.S. Dist. LEXIS 25114, at *6-7 (S.D.N.Y. Mar. 6, 2009) (awarding damages based on plaintiffs' submissions "which [are] unrebutted by defendants"). Moreover, as discussed *supra*, the facts alleged in Plaintiff's well pled and uncontroverted Complaint should be deemed true and supportive of her request for damages.

## IV.    PLAINTIFF'S DAMAGES CALCULATIONS

### A.  Compensatory Damages

Plaintiff is entitled to compensatory damages under each of her causes of action. "Compensatory damages recoverable for sexual assault…include compensation for the injury itself, conscious pain and suffering including mental and emotional anxiety which can be based on the plaintiff's subjective testimony plus special damages, which need not be pleaded" *Doe v. Alsaud*, No 13 Civ. 571 (RWS), 2017 WL 4541426 at *3 (S.D.N.Y. Oct. 10, 2017). *See Ortiz v. New York City Hous. Auth.*, No. 98 Civ. 9543, 198 F.3d 234, at *1, 4 (2d Cir. Sep. 2, 1999) (upholding a jury award of $3,000,000 in compensatory damages against NYCHA and for

plaintiff who was raped in a NYCHA low-income housing project); *see also Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132, 138 (2d Cir. 1993) (upholding a jury award of $1.75 million for a woman who was robbed and subjected to attempted rape.); *Doe v. City of Waterbury*, 2009 U.S. Dist. LEXIS 95936, 2009 WL 3348314, at *2-3 (D. Conn. Oct. 15, 2009) (awarding $8 million each to two girls who were prostituted as minors); *Grisanti v. Cioffi*, 2001 U.S. Dist. LEXIS 14358, 2001 WL 777435, *12-13 (D. Conn. Jun. 14, 2001) (upholding an award of $1.67 million to a woman raped four times by defendant); *Walker v. Dickerman*, 993, F. Supp. 101, 102, 106 (D. Conn. 1997) (awarding over $1.124 million to plaintiff who suffered long-term sexual abuse by her minister when she was an adolescent.)

It is respectfully submitted that the conduct alleged in this case is especially egregious and the effect to Plaintiff has been devastating. Plaintiff was a child – a thirteen-year-old girl when Defendant began to manipulate and abuse her for his own perverse and unlawful sexual desire. The abuse caused Doe to hate her body and she suffered several different eating disorders which Gonzalez encouraged. ¶¶ 44, 46-47, 55-57. Doe Decl. ¶¶ 38-41, 49-51. As a minor, Doe began to suffer signs of anxiety, and, and a loss of enjoyment in activities she once loved. ¶ 50. Doe Decl. ¶ 43.  Gonzalez demanded Doe not disclose the abuse to her friends or family. ¶ 52. Doe Decl. ¶ 44. Gonzalez frequently berated Doe at length whenever she objected to his sexual demands, destroying the self-worth of a young and impressionable child. ¶¶ 59-61, 70-71; 103. Doe Decl. ¶¶ 52-58. Gonzalez threatened to kill himself and Doe's loved ones if she ever tried to escape. ¶¶ 66; 68. Doe Decl. ¶¶ 59, 61. Doe's emotional distress was debilitating and interfered with her regular functioning. ¶ 100. Doe Decl. ¶ 92. She suffered suicidal ideation. *Id.* She began to abuse drugs just to get through her day-to-day. ¶ 101. Doe Decl. ¶ 93. Gonzalez impressed upon Doe she could not amount to anything except an object for sex. ¶ 104. Doe Decl. ¶ 96.  To

this day, Doe suffers depression, anxiety, loss of enjoyment of life, a fear of men, panic attacks, as well as discomfort and crying spells when engaging in intercourse with her husband. ¶ 133. Doe Decl. ¶ 124. She has been seeing various mental health providers for over a decade to abate this severe distress. ¶ 125. Doe Decl. ¶ 116. Accordingly, Plaintiff respectfully requests compensatory damages in the amount of $2,000,000.

## B. Punitive Damages

Plaintiff is entitled to punitive damages under her third cause of action. Indeed, The GMVA specifically allows injured parties to recover punitive damages. *See* N.Y.C. Admin. Code § 10-1104(a). Punitive damages are intended not only to "punish the tortfeasor" but also to "deter future reprehensible conduct." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (N.Y. 2007). The U.S. Supreme Court has noted that "reprehensibility" is "perhaps the most important" factor, and has identified certain aggravating factors that are associated with "particularly reprehensible conduct," *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996): "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (citing *Gore*, 517 U.S. at 575-76).

Gonzalez's conduct, which includes repeated sexual assault and rape of a minor, was undoubtedly violent and presented a threat of violence. Moreover, the record indicates that Gonzalez's conduct was not mere negligence but rather a premeditated and coercive endeavor against a vulnerable child. For years, Defendant groomed and manipulated Plaintiff, often with abuse language and threats of violence, to control her for his own perverse and unlawful desires. ¶¶ 59-61, 70-71; 103; 66; 68. Doe Decl. ¶¶ 52-54, 59, 61, 63-64, 95. Gonzalez statutorily raped

Plaintiff countless times and violently raped Plaintiff while she was unconscious and/or while she begged him to stop on numerous occasions ¶¶ 52-53; 84; 91; 105-106. Doe Decl. ¶¶ 45-46, 76, 83, 97-98. Finally, Plaintiff is aware of at least one set of criminal charges against Defendant for his predatory sexual conduct against children (¶ 115, Doe Decl. ¶ 106), showing a history, pattern, and practice of the type of misconduct Plaintiff survived. Defendant must be harshly reprimanded to deter him from engaging in future reprehensible conduct against children. Given the facts present here and severe emotional damage discussed above, it is respectfully submitted that a sizable punitive damage award is not only appropriate but falls well within the boundaries of Constitutional due process. *See, e.g., Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 167 (2d Cir. 2014) ("an approximate 2:1 ratio [punitive to compensatory damages] is both permissible under the Constitution and consistent with the established policies adopted and adhered to by this Court").[3] Accordingly, Plaintiff respectfully requests punitive damages in the amount of $1,750,000.

### C.  Attorney's Fees and Costs

Plaintiff's claim also arises under statutory provisions that provide her reasonable attorneys' fees and costs. *See* N.Y.C. Admin. Code § 8-502(f); 18 U.S.C. § 2255(a). Plaintiff seeks $54,275.00 in attorney fees and $1,331.70 in expenses for a total award of $55,606.70. This amount is reasonable and appropriate given the hours of work performed, the experience of Doe's counsel, and the complexity of this case and the legal work performed.

---

[3] Courts have affirmed punitive damages awards that are in a 10:1 ratio to combined economic and compensatory damages and can affirm substantially larger awards as well. *See, e.g., Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 74 (E.D.N.Y. 2002), aff'd, 93 F. App'x 260 (2d Cir. 2004) (awarding damages with ratios between 4:1 and 10:1); *Manzo v. Sovereign Motor Cars*, No. 08 Civ. 1229 (JG)(SMG), 2010 WL 1930237, at *5 (E.D.N.Y. May 11, 2010) (4:1 punitive / compensatory award appropriate), aff'd, 419 F. App'x 102 (2d Cir. 2011); *Kauffman v. Maxim Healthcare Servs.*, 509 F. Supp. 2d 210, 221 (E.D.N.Y. 2007) (punitive / compensatory ratio of 4:1); *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228 (S.D.N.Y. 1999) (punitive / compensatory ratio of approximately 4:1).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008). The rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (citation omitted). Plaintiff is also entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)

Here, this Court should consider that this district has in recent years increased attorney's fees awards for experienced civil rights counsel. As a result, present-day Eastern District rates for complex civil rights litigation are commensurate to the hourly rates Doe's counsel now seeks. For example, in *United States v. City of New York*, No. 07–CV–2067 (NGG)(RLM), 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013) – a case decided nine years ago and, thus, certainly not reflective of the higher, present day market rate – the Eastern District of New York found that a reasonable hourly rate for experienced civil rights counsel was $550 per hour. *In McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018), this district determined that a $500 hourly rate was a proper hourly rate for experienced civil rights counsel.

In the case at bar, the amount sought is comprised of work performed by associate attorneys (Travis Pierre-Louis and Julia Elmaleh-Sachs) billed at an hourly rate of $400, a former senior attorney (John A. Beranbaum) at an hourly rate of $625, and an attorney pending admission (Olivia Davis) at an hourly rate of $150. Plaintiff also seek paralegal support at an

hourly rate of $150. Julia Elmaleh-Sachs was admitted in 2016 and has approximately seven years of civil litigation experience, while Travis Pierre-Louis was admitted in 2018 and has approximately 5 years of civil litigation experience. John A. Beranbaum has over 30 years of civil litigation and trial experience. This case involved various legal issues including tort claims, civil rights law, and penal law violations. The sensitivity of the facts alleged required Plaintiff to file a request to proceed by pseudonym. This matter was further complicated (needlessly) by an apparent attempt by Defendant to evade service, which prolonged the matter and forced Plaintiff to incur expense. Bearing in mind the complexity of this case, the work experience of the attorneys, and the varied and extensive work performed, the fees requested are reasonable and commensurate, if not lower, than what comparable counsel would be expected to charge for similarly civil litigation work. Doe's attorneys provide **Ex. 5** — billing and accounting records generated by the Clio program, showing itemized entries detailing time billed and costs incurred. The exhibit provides detailed explanations of the hours claimed and billed. Based on the exhibits, Doe's attorney's claimed hours should be deemed both reasonable and recorded.

Plaintiff therefore respectfully request an award for costs and attorneys' fees in the amount of $55,606.70.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for default judgment against Defendant.