UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

JANE DOE,

                     Plaintiff,

     v.

JAVIER GONZALEZ,

                     Defendant.

---------------------------------------------------------X

**REPORT AND RECOMMENDATION**

21-CV-04580 (JS) (LGD)

**LEE G. DUNST**, Magistrate Judge:

Presently before the Court is Plaintiff's Motion for Default Judgment at Electronic Case

File Number ("ECF No.") 19. On April 12, 2023, District Judge Joanna Seybert referred the

Motion for Default Judgment to the undersigned for a Report and Recommendation. April 12,

2023 Order. The undersigned respectfully recommends that the motion for default judgment be

granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2021, Plaintiff Jane Doe commenced this action pursuant to New

York's Child Victim's Act,[1] C.P.L.R. § 214-g. ECF No. 1. On July 1, 2022, Plaintiff

filed the Amended Complaint, alleging that she suffered repeated sexual abuse committed

---

[1] The Child Victim's Act ("CVA") "extends the statute of limitations for civil actions brought by victims of child sexual abuse." *Doe v. Jones*, No. 22-CV-644 (KAM) (LB), 2022 WL 2065032, at *2 (E.D.N.Y. June 8, 2022). Claims covered by the CVA include any offense found in N.Y. Penal Code § 130, which includes rape, statutory rape, and other types of sexual misconduct. *See Doe v. New York City Board of Education*, No. 21-CV-4332, 2023 WL 2574741, at *3 (E.D.N.Y. Mar. 20, 2023) (explaining the background of the CVA). Plaintiff's claims are within the scope of the CVA because she alleges that Defendant repeatedly statutorily raped her when she was a minor. ECF No. 13 ¶ 2.

by Defendant Javier Gonzalez from the age of thirteen into her adulthood. ECF No. 13. Plaintiff alleges sexual assault, battery, and other claims under New York law, violations of the N.Y.C. Gender-Motivated Violence Protection Act (N.Y.C. Admin. Code § 10-1101, *et seq.*) ("GMVPA"), and violations of 18 U.S.C. § 2252A (which relates to child pornography and provides a civil remedy at Section 2255). ECF No. 21 at 1.

### A.    Background[2]

In 2002, Plaintiff was thirteen years old and lived with her parents in Suffolk County. ECF No. 13 ¶ 8. Like many teenagers, Plaintiff frequented American Online ("AOL") chatrooms on the Internet. *Id.* ¶ 11. On or about June 12, 2002, Plaintiff first met Defendant in one of these chatrooms. *Id.* ¶ 12. Defendant was twenty-three years old at the time. *Id.* The conversation between the two began with seemingly benign questions, but Defendant shifted to asking Plaintiff about her sexual history. *Id.* ¶ 20. Defendant eventually asked if he could come over to Plaintiff's family home later that night to meet her, and Plaintiff agreed. *Id.* ¶ 22. Defendant arrived at Plaintiff's home shortly after midnight but was scared off by Plaintiff's father. *Id.* ¶ 24-25.

Nonetheless, Defendant continued to message Plaintiff in the AOL chatroom, and the two chatted for the next few weeks. *Id.* ¶ 28. On or about June 27, 2002, at around 1:00 a.m., Defendant returned to Plaintiff's family home, sneaking in through Plaintiff's

---

[2] The facts included in this section are taken solely from the Amended Complaint at ECF No. 13. Since Defendant failed to answer, all well-pleaded allegations in the Amended Complaint are presumed to be true. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 77 (E.D.N.Y. 2020). When determining if a plaintiff is entitled to default judgment, the court can only consider the "non-conclusory, factual allegations in the complaint." *Id.* (citing *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 (E.D.N.Y. 2013)).

window while her parents were asleep. *Id.* ¶ 34-35. Defendant then performed sexual acts on Plaintiff and told her to perform oral sex on him. *Id.* ¶¶ 34-37.

As the sexual encounters between Plaintiff and Defendant continued, Defendant often made remarks about Plaintiff's body size. *Id.* ¶ 44. He claimed that he loved her small frame (she was thirteen years old at the time) but sometimes called her "meatball" or "fatty" when commenting on her weight. *Id.* These comments caused Plaintiff to develop anorexia and bulimia and abuse over-the-counter diet pills, as she believed that Defendant would no longer like her if she could not maintain her petite size. *Id.* ¶¶ 45, 56. Her weight dipped below one-hundred pounds over time. *Id.* ¶ 57. Defendant was aware of her eating disorder and encouraged it. *Id.* ¶ 47. Plaintiff also began to exhibit signs of anxiety and depression. *Id.* ¶ 50.

On multiple occasions, Defendant furnished Plaintiff with alcohol and drugs and engaged in sexual conduct with her while she was either intoxicated or under the influence of marijuana. *Id.* ¶¶ 52-53. Defendant also repeatedly demanded that Plaintiff take nude photos of herself and send them to him. *Id.* ¶ 72. Plaintiff acquiesced and sent nude or semi-nude photos of herself on multiple occasions, beginning when she was just fourteen years old. *Id.* ¶ 72. Defendant also sent nude photos of himself and often engaged in sexually explicit conversations with Plaintiff via cellphone. *Id.* ¶ 73.

Defendant forbade Plaintiff from having age-appropriate relationships, despite maintaining that he was allowed to have sex with whomever he wanted. *Id.* ¶ 48. This caused Plaintiff to develop immense feelings of guilt when she was around other boys her age and led to her distancing herself from her peers. *Id.* ¶ 61. Plaintiff realized that Defendant's actions were wrong, but when she tried to distance herself from him on

several occasions, he told her that he loved her and intended on marrying her, and often bought her gifts, including action figures, a sapphire ring, and lingerie that he expected her to wear. *Id.* ¶¶ 74-75. Despite maintaining that Plaintiff was not allowed to have other relationships and that he intended to marry her, Defendant married another woman in 2003 and moved to Germany. *Id.* ¶ 82.

By 2004, Defendant had divorced his wife and moved to Washington, D.C. *Id.* ¶ 87. The distance did not stop the contact between him and Plaintiff, however, as he traveled from Washington to New York on multiple occasions to visit Plaintiff. *Id.* ¶ 88. On one occasion, Plaintiff also traveled to Washington to visit Defendant, and immediately upon entering his apartment, Defendant pushed Plaintiff over the side of the couch and forcefully engaged in sexual intercourse with her. *Id*. ¶ 106. He demanded that she engage in sexual intercourse with him four more times that day. *Id.* Even though Defendant had moved away, Plaintiff's mental health continued to worsen as she suffered disturbing nightmares, engaged in excessive drinking and chronic marijuana use, skipped school for weeks at a time and accrued approximately two months of consecutive absences, and began to experiment with Xanax and Percocet. *Id*. ¶¶ 97, 100, 101.

The contact between Defendant and Plaintiff continued until Plaintiff was in college. *Id.* ¶ 119. One of the final encounters between the two occurred in spring of 2013, when Defendant traveled to New York City to visit Plaintiff while she was in law school. *Id.* ¶ 121. On this visit, Defendant convinced Plaintiff to engage in unprotected sex, and Plaintiff later tested positive for chlamydia because of that encounter. *Id.* ¶ 124.

The final in-person encounter between the two occurred in 2014. *Id.* ¶ 133.

Today, Plaintiff resides in New York City, and Defendant resides in Washington.[3]  *Id.* ¶¶

6-7.  Despite the time and distance, Plaintiff continues to feel the effects of Defendant's

abuse. *Id.* ¶ 3.  She suffers frequent nightmares and intrusive thoughts. *Id* ¶ 133.  She

becomes paranoid whenever a man gets close to the children of her friends.  *Id.*  She

struggles to maintain a healthy relationship with her parents, as she believes that they

should have protected her from the abuse.  *Id.*  She experiences unexpected emotional

breakdowns when engaging in healthy sexual activities with her partner.  *Id.*

**B.      Procedural History**

On August 13, 2021, Plaintiff initiated the instant action against Defendant.  ECF No. 1.

The original complaint alleged five causes of action stemming from Defendant's repeated sexual

abuse of Plaintiff: (1) sexual assault and battery; (2) claims under the GMVPA; (3) negligent

infliction of emotional distress; (4) intentional infliction of emotional distress; and (5) violation

of the Trafficking Victim Protection Act, 18 U.S.C. §§ 1591(a).  *Id.*  The original complaint was

served on Defendant on September 15, 2021, by posting the complaint on the door of

Defendant's usual place of abode in Washington.  ECF No. 8.  Defendant did not respond to the

complaint by the deadline, and on February 22, 2022, Plaintiff obtained a Certificate of Default

from the Clerk of Court for the United States District Court for the Eastern District of New York.

ECF No. 10.

---

[3] Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this case. Plaintiff has adequately pled diversity jurisdiction by alleging that she and Defendant are residents of different states—New York and Washington, D.C.  ECF No. 13 ¶¶ 6-7.  Because Defendant has failed to appear, all allegations are presumed to be true. *See Antoine*, 489 F. Supp. 3d at 81.  In addition, Plaintiff has adequately established that the amount in controversy exceeds the $75,000 amount required by 28 U.S.C. § 1332(b) because she seeks $2,000,000.00 in compensatory damages, $1,750,000.00 in punitive damages, and $55,606.70 in attorney's fees and costs.  ECF No. 21 at 16-17.

On July 1, 2022, Plaintiff filed the Amended Complaint.  ECF No. 13.  In the Amended Complaint, Plaintiff alleged six causes of action: (1) sexual assault and battery; (2) rape and criminal sexual act in violation of CPLR 213-c; (3) claims under the GMVPA; (4) violation of the Trafficking Victim Protection Act; (5) certain activities relating to material constituting or containing child pornography, 18 U.S.C. § 2252A; and (6) civil remedy for personal injury, 18 U.S.C. § 2255.  However, Plaintiff has since opted to withdraw her claim for rape and criminal sexual act in violation of CPLR 213-c and her claim for violation of the Trafficking Victim Protection Act.  ECF No. 21 at 9 n.2.  The amended complaint was personally served upon Defendant at his Washington home.  ECF No. 20-2.  Again, Defendant failed to answer, and the Clerk of Court for the United States District Court for the Eastern District of New York entered a certificate of default on August 29, 2022.  ECF No. 20-3.

Presently before the Court is a motion for default judgment, filed by Plaintiff on February 2, 2023.  ECF No. 19.  Plaintiff has submitted a memorandum in support of the motion for default judgment, claiming that she is entitled to a default judgment because the factual allegations of Defendant's continued abuse support the alleged causes of action, and Defendant has failed to answer any pleadings or appear in this action.  ECF No. 21.  Plaintiff also has submitted a declaration in support of the motion, in which she affirms the allegations set forth in the Amended Complaint.  ECF No. 20-4.  Plaintiff seeks compensatory damages in the amount of $2,000,000.00, punitive damages in the amount of $1,750,000.00 and attorney's fees and costs in the amount of $55,606.70.  ECF No. 21 at 15-17.  Defendant has filed no opposition to the current motion.

## II.   LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 55

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process that must be followed if a defendant defaults.  The Clerk of the Court must first enter the default, and the court then may enter the default judgment if the complaint sets forth a valid claim and the plaintiff has "established her entitlement to a specific amount of damages."  *Antoine*, 489 F. Supp. 3d at 80.  However, a "a plaintiff is not entitled to a default judgment as a matter of right, simply because the defendant is in default."  *Astudillo v. Fusion Juice Bar Inc.*, No. 19-CV-2590 (EK) (CLP), 2023 WL 3802754, at *3 (E.D.N.Y. Mar. 23, 2023).  Instead, courts have significant discretion in granting default judgments, and consider the following factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Antoine*, 489 F. Supp. 3d at 80 (quoting *Joseph v. HDMJ Restaurant, Inc.*, 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013)).

### B.      Willfulness

A default is deemed willful if "it is sufficient to conclude that the defendant defaulted deliberately."  *Leger v. Navila Asset Mgmt. Inc.*, No. 20-CV-3820 (EK)(RML), 2023 WL 2352843, at *2 (E.D.N.Y. Feb. 6, 2023), *report and recommendation adopted*, 2023 WL 2349581 (E.D.N.Y. Mar. 3, 2023) (quoting *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182,187 (2d Cir. 2015)).  In other words, while a

finding of bad faith is not necessary, "[w]illfulness requires more than negligence or carelessness." *Id.*

The Second Circuit has held that failure to respond to a complaint evinces willful default, so long as service on the defendant is proper. *See S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (unexplained failure to respond to complaint shows willfulness). Service is proper if it is done pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Id.* Pursuant to Rule 4(e)(1), service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Leger*, 2023 WL 2352843, at \*4. Under New York law, service on an individual can be effectuated by personally serving the summons to the defendant, delivering the summons to a person of suitable age and discretion at the defendant's home, delivering the summons to the defendant's agent, or posting the summons on the door of the defendant's home. *Leger*, 2023 WL 2352843, at \*4.

### C.      Meritorious Defenses

A defendant has a meritorious defense against the claims in the complaint if they have presented a defense that is "good at law so as to give the factfinder some determination to make." *Antoine*, 489 F. Supp. 3d at 81. When a defendant fails to answer the complaint, the well-pleaded allegations in the plaintiff's complaint are presumed to be true, and the court is unable to determine whether the defendant has any meritorious defenses. *Id.* Therefore, when a defendant defaults, this factor "weighs in favor of granting a default judgment." *Id.* Nevertheless, even when a defendant has failed to answer the complaint, "the plaintiff must still demonstrate that the factual allegations set forth in her complaint state valid claims to relief." *Id.*

8

**D.    Prejudice Toward Plaintiff**

Denying a motion for default judgment would be prejudicial toward the plaintiff if there

would be "no additional steps available to secure relief in this [c]ourt." *Id.* at 90 (quoting *Bridge*

*Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at

*2 (S.D.N.Y. Oct. 27, 2008)).

**E.    Damages**

While a defendant's liability is confirmed by an entry of default, the plaintiff's

entitlement to damages is not established automatically.  *See Doe v. Green*, No. 17 CV 1765

(RA) (OTW), 2021 WL 2188534, at *4 (S.D.N.Y. Apr. 29, 2021)*, report and recommendation*

*adopted*, 2021 WL 2188148 (S.D.N.Y. May 28, 2021) (explaining that the court must conduct an

inquiry in order to ascertain damage); *see also Antoine*, 489 F. Supp. 3d at 90 (explaining that

although allegations are deemed true upon a party's default, allegations of damages are not).

The court must be able to ascertain damages with "reasonable certainty."  *Green*, 2021 WL

2188534, at *4.  The plaintiff bears the burden of establishing their entitlement to damages and

can do so by presenting sufficient evidence to the court in the form of "detailed affidavits or

documentary evidence." *Id.*  In situations where damages are "not susceptible to simple

mathematical calculation," the court enjoys discretion in determining the weight it affords the

documentary evidence presented by the plaintiff, and in determining whether an evidentiary

hearing is necessary.  *See Antoine*, 489 F. Supp. 3d at 91.

**III.    DISCUSSION**

**A.    Plaintiff Has Complied With Rule 55**

As an initial matter, Plaintiff has complied with the two-step process for entering a

default judgment that is set forth in Rule 55.  She obtained a certificate of default from the Clerk

of Court on August 29, 2022, which stated that Defendant failed to answer the Amended

Complaint served upon him on July 10, 2022.  ECF No. 17.  She now seeks a default judgment

in the pending motion.

**B.      Defendant Willfully Defaulted**

Defendant has failed to respond to the complaint or otherwise appear in this action.  In

accordance with Second Circuit precedent, his failure to respond is evidence of a willful default.

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A]

party's default is deemed to constitute a concession of all well pleaded allegations of liability.").

Still, the court must determine whether service upon Defendant was proper.  Rule 4(e) directs the

Court to look to state law to determine if service was proper.  Relevant New York state law

provides that service can be made "by delivering the summons within the state to the person to

be served."  N.Y. C.P.L.R. § 308(1).  Plaintiff has filed an affidavit of service confirming that

Defendant was personally served at his Washington residence, and service on Defendant was

clearly proper.  *See Leger*, 2023 WL 2352843, at *4 (holding that because the defendant was

served in compliance with N.Y. C.P.L.R. § 308, service was proper, and the defendant's default

was willful).  As Defendant was properly served and failed to answer the Amended Complaint,

his default was willful.

**C.      Defendant Has Failed to Raise Any Meritorious Defenses and the Amended
          Complaint States Valid Claims For Relief**

Because Defendant has not responded to the Amended Complaint, he has not asserted

any meritorious defenses to any of the claims.  Therefore, the court is unable to make any

determinations about the merit of any defenses.  *See Antoine*, 489 F. Supp. 3d at 82 (explaining

that when a defendant defaults, courts are unable to decide whether a defendant has a meritorious

defense to plaintiff's allegations).  Nevertheless, the court must still assess whether the Amended

Complaint states valid claims for relief.  *See id.*

### i. Plaintiff States a Valid Claim for Sexual Assault and Battery

To state a claim for assault, Plaintiff must allege that Defendant intentionally

placed her in "fear of imminent harmful or offensive contact."  *Antoine*, 489 F. Supp. 3d at 90.

To state a claim for battery, Plaintiff must allege that Defendant engaged in an "intentional

wrongful physical contact with [the plaintiff] without consent."  *Id.*  Plaintiff's allegations, which

are accepted as true, undoubtedly establish a claim for both sexual assault and battery.

Defendant repeatedly statutorily raped Plaintiff from age thirteen to adulthood, constituting a

wrongful physical contact.  Frequently, these encounters featured force or the use of alcohol and

drugs.  For example, on a visit to Washington in February 2006, Defendant pushed Plaintiff over

the side of a couch without her consent and forcefully engaged in sexual intercourse with her.

ECF No. 13 ¶ 106.  *See Antoine*, 489 F. Supp. 3d at 90 (holding that the plaintiff stated a claim

for assault and battery when she alleged that the defendant pushed her onto a bed and coerced

her into sex); *see also Noonan v. New York City Police Dep't Officer Carlos Becker*, No. 14 CV

4084-LTS-JLC, 2017 WL 3638201, at *7 (S.D.N.Y. Aug. 23, 2017) (holding that the plaintiff

stated a claim for assault and battery when she alleged that the defendant raped her).

Defendant also repeatedly lashed out and made violent threats when Plaintiff expressed

an intention to cut off contact with him, demonstrating that Plaintiff reasonably perceived a

threat of imminent harm.  For example, Defendant told Plaintiff that if she left him, he "would

get drunk and kill himself by purposefully crashing his car," and often threatened that he would

"kill anyone else that would keep [them] apart."  ECF No. 13 ¶¶ 67-68; *see Antoine*, 489 F.

Supp. 3d at 90 (holding that the defendant's statement that he "'used to kill animals as a child'

and that she too should be afraid" was sufficient to state a claim for assault).  Defendant's

repeated sexual abuse, combined with his violent threats, is sufficient to state a claim for assault

and battery.

### ii. Plaintiff States a Valid Claim for Violation of The Gender-Motivated Violence Protection Act

The elements that Plaintiff must prove to state a GMVPA (N.Y.C. Administrative Code

§ 10–1101, *et seq*.) claim are: "(1) the alleged act constitutes a misdemeanor or felony against

the plaintiff; (2) representing a serious risk of physical injury; (3) that was perpetrated because of

plaintiff's gender; (4) in part because of animus against plaintiff's gender; and [(5)] resulted in

injury." *Doe v. Gooding*, No. 20 CV 06569 (PAC), 2021 WL 5991819, at *5 (S.D.N.Y. July 29,

2021) (quoting *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y.

2018)).

Defendant's conduct satisfies all elements required for a GMVPA claim. First, statutory

rape is a felony under New York law. N.Y. Penal Code § 130.25 (McKinney 2001). Second,

rape and sexual assault represent a serious risk of physical injury, as evidenced by the Supreme

Court's statement that "[sexual assault] is a violent crime because it normally involves force, or

the threat of force or intimidation, to overcome the will and the capacity of the victim to resist."

*Green*, 2021 WL 2188534, at *4 (citing *Coker v. Georgia*, 433 U.S. 584, 597-98 (1977)). The

Supreme Court has also acknowledged that sexual assault is often accompanied by physical

injury. *Id.* at *4. Taking the third and fourth elements together, Plaintiff's allegations are

sufficient to show that the act was committed because of animus against her gender, as

"allegations of rape or sexual assault are, by themselves, sufficient to plead animus based on the

victim's gender." *Doe*, 2021 WL 5991819, at 5 (citing *Breest v. Haggis*, 115 N.Y.S.3d 322, 330

(1st Dep't 2019)). Lastly, Defendant's actions resulted in injury to Plaintiff, as she still

experiences depression, anxiety, Post-Traumatic Stress Disorder ("PTSD"), and difficulties in

forming romantic relationships.  ECF No. 13 ¶ 3.

### iii.  Plaintiff States a Valid Claim for Violations of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B)

To state a claim for a violation of 18 U.S.C. § 2252A(a)(2), Plaintiff must allege facts that show that Defendant knowingly received or distributed child pornography by "any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate commerce or foreign commerce by any means, including computer."  18 U.S.C. § 2252A(a)(2)(A).  To state a claim for a violation of Section 2252A(a)(5)(B), Plaintiff must allege facts that show that Defendant knowingly possessed "any material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce."  "Child pornography" is defined as "any visual depiction, including any photograph, film, video, picture . . . where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2256(8).

On multiple occasions, Defendant requested naked photos of Plaintiff, beginning when she was only fourteen years old.  ECF No. 13 ¶ 72.  Defendant continued to receive and possess nude or semi-nude photos of Plaintiff when she was a minor.  *Id.*  He received these photos over the Internet, which courts have held constitutes a facility of interstate commerce.  *See United States v. Clarke*, 979 F.3d 82, 93 (2d Cir. 2020) ("The use of the Internet . . . constituted transportation using a means or facility of interstate commerce.").  Therefore, Plaintiff's allegations that Defendant repeatedly received and possessed nude photos of her are sufficient to state a claim under Sections 2252A(a)(2) and 2252A(a)(5)(B).

Plaintiff is therefore entitled to civil damages as a result of these violations pursuant to Section 2255(a), which provides a civil remedy for a violation of Section 225A.  18 U.S.C.

§ 2255(a).

**D.      Denial of the Motion for Default Judgment Would Be Prejudicial Against Plaintiff**

If the Court were to deny Plaintiff's motion for default judgment, she would be unable to

recover for any of the injuries that she suffered as a result of Defendant's continued abuse.

Therefore, denial of the motion would be prejudicial toward Plaintiff. *See Antoine*, 489 F. Supp.

3d at 90 (holding that it would be prejudicial toward the plaintiff to deny the motion for default

judgment because "plaintiff would be unable to recover for the claims adequately set forth in the

complaint").

**E.      Plaintiff's Requested Damages Are Reasonable**

In this case, Plaintiff has requested both compensatory and punitive damages, along

with attorney's fees and costs.[4]  Plaintiff's damages are not susceptible to a precise mathematical

computation. *See Green*, 2021 WL 2188534, at *4 (quoting *Mathie v. Fries*, 935 F. Supp. 1284,

1305 (E.D.N.Y. 1996) *aff'd in part and remanded in part and remanded in part,* 121 F.3d 808

(2d Cir. 1997)) ("[T]he law does not provide a precise formula by which pain and suffering and

emotional distress may be properly measured and reduced to monetary value").  Not only are the

damages a result of sexual abuse, but this abuse spanned over years and resulted in a variety of

psychological injuries to Plaintiff.  Since there is no precise formula to compute damages, it is

within the court's discretion to determine whether an evidentiary hearing is necessary. *See*

*Antoine*, 489 F. Supp. 3d at 91.  In this case, the declaration submitted by Plaintiff and the

---

[4] In determining whether Plaintiff's requested damages are reasonable, the Court examines the evidence presented in the Amended Complaint at ECF No. 13, the Declaration of Jane Doe (Plaintiff) at ECF No. 20-4, and the Plaintiff's Memorandum of Law at ECF No. 21. When assessing damages, courts may review any affidavits or other documentary evidence before the court. *See Antoine*, 489 F. Supp. 3d at 90 (noting that the court looked at the plaintiff's damages contentions set forth in her affidavit and her memorandum of law to assess damages).

memorandum of law submitted by her attorneys set out detailed and lengthy accounts of

Defendant's conduct and Plaintiff's injuries.  ECF Nos. 20-4 & 21.  These extremely detailed

submissions provide the basis for damages upon which the court can rely to establish damages

with reasonable certainty; therefore, a hearing on the issue of damages is unnecessary.  *See*

*Burns v. Scott*, No. 20-CV-10518 (JGK), 2022 WL 10118491 (S.D.N.Y. Oct. 17, 2022)*,*

*reconsideration denied*, 2022 WL 18858909, at \*10 (S.D.N.Y. Nov. 9, 2022) (holding that no

hearing was necessary to ascertain damages because the plaintiff's submissions, combined with

the defendant's "admissions resulting from its default, constitutes a sufficient basis from which

to evaluate the fairness of [the plaintiff's] damages request").

### i.  Compensatory Damages

Plaintiff's request for $2,000,000.00 in compensatory damages is reasonable, given the

circumstances of the abuse she suffered.  *See Green*, 2021 WL 2188534, at \*4 (holding that a

court is entitled to consider the individual circumstances of a case when granting damages for

sexual assault cases).  Courts in the Second Circuit have upheld large compensatory damages

awards for sexual assault and rape victims, but those awards have varied drastically from case to

case; therefore, to determine if the requested amount is reasonable, it is necessary to compare

this case to other analogous cases in this Circuit.  *See Green*, 2021 WL 2188534, at \*4 (citing

*Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.,* No. 13-CV-571 (RWS), 2017

WL 4541426, at \*4 (S.D.N.Y. Oct. 10, 2017)) (considering analogous cases when determining

damages for default judgment).

Plaintiff has provided the Court with several cases in support of the $2,000,000.00

proposed compensatory damages award.  *See* ECF No. 21 at 14-15.  Among the cases that

Plaintiff has cited, three stand out as the most factually analogous to the present case: *Doe v. City*

*of Waterbury*, No. 3:01-CV-2298 (SRU), 2009 WL 3348314 (D. Conn. Oct. 15, 2009); *Grisanti v. Cioffi*, No. CIV399CV490JBA, 2001 WL 777435 (D. Conn. June 14, 2001), *aff'd,* 38 F. App'x 653 (2d Cir. 2002); and *Walker v. Dickerman*, 993 F. Supp. 101 (D. Conn. 1997).

In *City of Waterbury*, the court awarded $8,000,000.00 to two minor plaintiffs who were sexually abused by the Waterbury mayor on numerous occasions. 2009 WL 3348314, at *3. The court cited the plaintiffs' "loss of innocence, childhood, and trust and the burden of the memories of the sexual abuse trauma" as the reasons for the large award. *Id.* at *2. This is analogous to the case presently before the Court. Plaintiff's "loss of innocence" is evidenced by the fact that she suffered continued sexual abuse at the age of just thirteen, and she continues to carry the "burden of the memories" today, as she suffers from PTSD and has difficulty forming intimate relationships. ECF No. 13 ¶ 3.

In *Grisanti*, the jury awarded $1,600,000.00 to the plaintiff for four sexual assaults that she suffered at the hands of the defendant. 2001 WL 777435, at *5. Relevant to that damages award was the fact that there was a consistent pattern of domination between the two parties, with the plaintiff saying, "how powerless she [was] to stop [the abuse]." *Id*. at *6. This domination was evidenced by threatening phone messages that the defendant left the plaintiff, threatening that he would take her child from her. *Id*. Much like *Grisanti*, Plaintiff here experienced these same feelings of helplessness and often relented to Defendant's demands because he made threats that he was going to kill himself if she did not acquiesce. ECF No. 13 ¶ 67.

In *Walker*, the court awarded $1,124,000.00 to the plaintiff, who was sexually abused by her minister over the span of four years. 993 F. Supp. 101 at 102-03. The abuse began when the plaintiff was only fourteen years old and feeling alone and miserable at home, much like Plaintiff

16

in this case. *See id.* at 102. Similar to the present case, the defendant in *Walker* became verbally abusive and constantly commented on the plaintiff's weight. *See id. Walker* is also analogous to the present case because both display a continued pattern of sexual and verbal abuse perpetrated by an older man against a child.

Given the factual similarities between these cases and the present case, a $2,000,000.00 compensatory damages award for the years of continued abuse that Plaintiff suffered is both fair and reasonable in light of the circumstances.

### ii. Punitive Damages

Plaintiff is requesting $1,750,000.00 in punitive damages. ECF No. 21 at 17. New York's GMVPA provides that a party can seek punitive damages in a civil cause of action alleging violations of the Act. N.Y.C. Admin. Code § 10-1104(a). Much like compensatory damages, punitive damages awards must be "fair, reasonable, predictable, and proportionate." *Green*, 2021 WL 2188534, at *8 (citing *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013)). There are three factors that courts consider in determining whether to award punitive damages: "(1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to compensatory damages, and (3) the difference between the award and the penalties authorized or imposed in comparable cases." *Id*.

Defendant's conduct is particularly reprehensible. He had sex with a minor countless times, made threats to continue the relationship, demanded and received nude photos from a minor, and furnished a minor with alcohol and drugs for the purpose of having sex with her. *See id.* at *10 (holding that the defendant's conduct of raping the plaintiff was reprehensible because he preyed on someone that he found vulnerable). Furthermore, Defendant has previously been criminally charged for possession of child pornography in a separate matter, demonstrating that

punitive damages are necessary to serve as a deterrent from similar activity in the future.  ECF

No. 13 ¶ 106.

For sexual assault cases, "courts in this Circuit frequently award punitive damages that

are equal to" the amount awarded for compensatory damages.  *Antoine*, 489 F. Supp. 3d at 101

(cases cited therein).  As stated in the previous section of this discussion, the $2,000,000.00

award for compensatory damages was reasonable, therefore the award of $1,750,000.00 for

punitive damages is also reasonable.  This ratio between compensatory and punitive damages is

in-line with comparable sexual assault cases in this Circuit.  *See Green*, 2021 WL 2188534, at *9

(citing various cases from the Second Circuit regarding the appropriate ratio between

compensatory and punitive damages).

### iii.  Attorney's Fees and Costs

Plaintiff seeks attorney's fees and costs in the amount of $55,606.70.  Her request for fees

is pursuant to N.Y.C. Admin. Code § 10-1104 (authorizing a court to award attorneys' fees for a

violation of the GMVPA) and 18 U.S.C. § 2255(a) (authorizing a court to award attorney's fees

for a violation of 18 U.S.C. § 2255A).  Courts determine a "presumptively reasonable fee" that

the party seeking attorney's fees is entitled to recover by "multiplying the number of hours

reasonably expended on litigation by an hourly rate that a reasonable, paying client would be

willing to pay."  *Astudillo*, 2023 WL 3802754, at *15.  In order to determine what a reasonable

client would pay, courts consider the community in which the district court sits and look to the

prevailing rates for attorneys in that field with comparable experience.  *Id.*

Plaintiff's attorneys provided the Court with detailed invoices that show the exact amount

of time spent on litigation along with the fee that each attorney working on the case charges.

ECF No. 20-5.  Two associate attorneys billed at an hourly rate of $400.  ECF No. 21 at 18.  A

former senior attorney billed at an hourly rate of $625. *Id.* An attorney pending admission billed at an hourly rate of $150. *Id.* There also were paralegals working on the matter who billed $150 an hour. *Id.* Precedent in the Second Circuit suggests that "a reasonable hourly rate for a civil rights attorney can range from $250 to $650, with rates clustering around $450 per hour for experienced attorneys in 'garden variety' civil rights case[s]." *Rosario v. City of New York*, No. 18-CV-4023 (LGS)(SDA), 2023 WL 2908655 (S.D.N.Y. Jan. 27, 2023), *report and recommendation adopted as modified*, 2023 WL 2523624, at *7 (S.D.N.Y. Mar. 15, 2023) (citing *Lilly v. City of New York,* 934 F.3d 222, 231 (2d Cir. 2019)). The rates charged in this case are within the reasonable range provided by Second Circuit precedent.

Additionally, the Court had reviewed the billing records provided by Plaintiff at ECF No. 20-5 and finds the hours worked and the costs incurred to be reasonable in light of the work performed in this case.

## IV.  CONCLUSION

For the above reasons, the undersigned recommends that Judge Joanna Seybert grant Plaintiff's motion for default judgment and award $2,000,000.00 in compensatory damages, $1,750,000.00 in punitive damages, and $55,606.70 in attorney's fees and costs.

## V.  OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Seybert. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55

(1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell*

*v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d

566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
      August 4, 2023

**SO ORDERED**:

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge